UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA


|  |  |  |
|---|---|---|
| KRISTEN MADISON DAY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05-CV-300 |
| | ) | Judge Curtis L. Collier |
| THE KRYSTAL COMPANY | ) | |
| | ) | |
| Defendant. | ) | |


## <u>M E M O R A N D U M</u>

Before the Court is Defendant Krystal Company's ("Defendant") motion for summary judgment (Court File No. 22) and a supporting memorandum (Court File No. 24). Plaintiff Kristen Madison Day ("Plaintiff") filed a response to Defendant's motion (Court File No. 30). Defendant, in turn, filed a reply to Plaintiff's response (Court File No. 35). For the following reasons, the Court will **GRANT** Defendant's motion for summary judgment and will **DISMISS** Plaintiff's wage discrimination claim under the Tennessee Human Rights Act.

## I.   STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the

nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, (1986).  However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment.  *Id.* at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).  The standard for summary judgment mirrors the standard for directed verdict.  *Anderson*, 477 U.S. at 250.  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  There must be some probative evidence from which the jury could reasonably find for the nonmoving party.  If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment.  *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    <u>RELEVANT FACTS</u>

In the fall of 1998, Plaintiff applied for an employee benefits manager position with Defendant.  After interviewing Plaintiff, Larry Reeher ("Reeher"), Defendant's Human Resources Vice President at the time, sent Terry Mathews ("Mathews"), Defendant's Human Resources Director at that time, an e-mail indicating Plaintiff was "light on what we'd ideally want but could

grow into the role. . . (She's not a candidate for the HR Manager slot)." (Court File No. 22, Exh. F, Declaration of Roger Rendin ("Rendin Decl."), part (b)). Reeher also described Plaintiff as being "bright eyed, bushy tailed." *Id.* Plaintiff began working with Defendant as a Employee Benefits Manager in December 1998, at a salary of $30,000 (Court File No. 30, Exh. A, Deposition of Kristen Day ("Day Dep."), pp. 67-68 ). After Plaintiff had been working for Defendant for almost two years, Mathews recommended a pay increase since, in his opinion, she had been "low balled" when hired. (Rendin Decl., part (d)). Mathews recommended a one time increase of $3,500, and it was approved. *Id.*

As Employee Benefits Manager, Plaintiff performed several duties including: managing benefits for more than 10, 000 employees, managing a budget of $3.5 million; managing vendor relationships with insurance carriers; managing human resource relationships such as worker's compensation, training and orientation, employee statistics, pension and 401k; and providing benefit information to the employees. *Id.* at 76-78. Plaintiff also directly supervised five employees in Human Resources, provided quarterly reports and updates to the executive committee, and devoted time to the management of the Human Resources Department. *Id.* During her tenure with Defendant, Plaintiff received praises for her work from her supervisor, Mathews, and Roger Rendin ("Rendin"), Vice President of Human Resources.

On November 23, 2003, Mathews suffered a brain aneurism and was on leave for six months[1]. (Day Dep. at 145). Mathews' duties were distributed among Rendin, Plaintiff, outside counsel, and an outside company. *Id.* at 145-48. While Mathews was on leave, Plaintiff met with him and expressed her desire to obtain his position if he were not able to return to work. *Id.* at 101.

---

[1]According to Defendant's reply brief, Matthews is now deceased (Court File No. 35 at 2).

Mathews told Day she would not be considered for a promotion because she was a woman. *Id*.

Nonetheless, during Plaintiff's May 2004 evaluation, she told Rendin she was interested in obtaining

Mathews' position if he did not return. *Id*. at 150. Rendin told Plaintiff she had been doing a very

good job fulfilling some of Mathews' duties in his absence, and this was her chance to move forward

in her career with human resources. *Id*. He also suggested she attend a women in management

seminar. *Id*. at 130-31. Plaintiff found this suggestion to be "demeaning and gender biased," so

instead of taking classes pertaining to women in management, she started attending seminars that

would help her obtain her senior-level certificate. *Id*.

Although Mathews returned to his position after six months of leave, he ultimately left his

position with Defendant in September 2004. *Id*. at 150. In January 2005, Plaintiff received a senior

certificate in human resources. *Id*. One month later, during a company presentation to 70 restaurant

managers, Steve Caldwell ("Caldwell"), Director of Operations, introduced Plaintiff to the audience

as the benefits manager and stated she "was really just kept at The Krystal Company as eye candy."

*Id*. at 93. Plaintiff felt this comment was extremely inappropriate since she was about to make a

presentation to the group. *Id*. at 94.

During Plaintiff's May 2005 performance evaluation, Plaintiff once again told Rendin  she

was interested in obtaining Mathews' position. (Day Dep. at 150). Rendin made comments Plaintiff

interpreted to mean she had to choose between a career in management and being "one of the girls."

*Id*. at 85. During his deposition, Rendin explained he advised Plaintiff if she wanted to advance her

career, she should associate with more upper level employees (who were almost exclusively male)

rather than lower-level employees (who were mostly females). (Court File No. 22, Deposition of

Roger Rendin ("Rendin Dep.") at 29-31).

Although Plaintiff received praises from her two immediate supervisors, Mathews and Rendin, Krystal's Chief Executive Officer, James Fred Exum (" Mr. Exum") was not satisfied with Plaintiff's service to his wife, Karen Exum ("Mrs. Exum"), on issues regarding their benefit plan. On one occasion Ms. Exum called Plaintiff to ask about a cap on coverage for certain procedures and Plaintiff told Ms. Exum she should "get a cheaper doctor." (Court File No. 22, Exh. D, Deposition of Karen Exum ("K. Exum Dep.") at 26). Plaintiff does not recall making this comment. (Day Dep. at 161). Sometime afterwards, one of the Exums' sons was dropped from coverage because he was college-aged and the insurance company did not have a form on file showing he was in fact registered with a college full time. (Court File No. 22, Exh. C, Deposition of James Fred Exum ("F. Exum Dep.") at 21). Ms. Exum contacted Plaintiff, and the issue was resolved. *Id*. at 23. The next year, the Exums' son was once again dropped from coverage after they had filled out the appropriate form. *Id*. at 26. Since the same problem had occurred again, Mr. Exum informed Mrs. Exum to contact Mathews rather than Plaintiff regarding issues concerning their benefit plan. *Id*. at 27. Although Mr. Mathews handled the problem the second time, the Exums had the same problem in subsequent years. *Id*. at 29.

Once Mathews was no longer employed with Defendant, Mr. Exum told his wife to contact Rendin if she had a benefits question. *Id*. at 30-31. In May 2005, Mrs. Exum called Mr. Exum's administrative assistant regarding a laboratory procedure she believed was erroneously charged to her. (K. Exum Dep. at 49-50). Mr. Exum's assistant, in turn, contacted Plaintiff, and Plaintiff advised her the charge was correct. (Day Dep. at 168). Plaintiff also stated if Mrs. Exum felt the charge was incorrect, she could contact Kanawha, the insurance company, to inquire about the charge or Mrs. Exum could sign a HIPAA authorization, authorizing Plaintiff to talk to Kanawha

on Mrs. Exum's behalf. *Id*. at 165-66. Mr. Exum's assistant relayed this information to Mrs. Exum. (K Exum Depo. at 49-50). Mrs. Exum stated she would take care of this herself, but Mr. Exum's assistant told her Kanawha would contact her at 10:00 a.m. the next day. *Id*. at 50. The next day Kanawha contacted Mrs. Exum, agreed the charge was not correct, and fixed the problem. *Id*. As a result of his frustration over the repeated benefits mishaps, Mr. Exum instructed Rendin to fire Plaintiff by July 1, 2005. (F. Exum Dep. at 34). Because Rendin would be out of town July 1, 2005, Mr. Exum agreed Rendin could put it off for a couple of weeks until he got back. (Rendin Dep. at 28).

Once Rendin was out of the country, Plaintiff informed him she was going to get married. (Rendin Dep. at 27-28). Plaintiff was terminated on July 13, 2005. (Day Dep. at 152). During her termination, Rendin told Plaintiff she could resign and tell everyone she was doing so because of her upcoming marriage. *Id*. at 123-24. At the time of Plaintiff's termination, she was receiving a salary of around $47,000. (Rendin Dep. at 48). However, during her last year of employment with Defendant, male managers were hired at a starting salary of $75,000 per year, plus bonus. (Day Dep. at 141). Two of the managers were the same age as Plaintiff. *Id*. Plaintiff also noticed male directors were paid significantly higher salaries than female directors. *Id*. at 134-35.

According to Plaintiff, soon after she was terminated, Rendin commented to an employee he did not understand why she was upset about her termination because now she could be a stay-at-home mom. (Day Depo. at 123). Redin denies making this comment but states when he was told Plaintiff had gotten married to a man who had children already, he commented Plaintiff had told him she wanted to become a mother, have a family and raise children and now she had achieved that. (Rendin Dep. at 47-48). Plaintiff admits at one point she told Rendin her "pipe dream" was to go

back to school, get a Ph.D., and become a professor of human resources; she stated when she made that change of going to school full time, she would like to have children and be a stay-at-home mom while studying for her Ph.D. (Day Dep. at 151-52). After Plaintiff's termination, her duties were given to Angela McLaughlin ("McLaughlin"), a female benefits specialist, and as a result, Jennifer Sawyer was hired to handle the work McLaughlin could no longer do. (Rendin Dep. at 52).

## III.   DISCUSSION

Plaintiff's complaint contains four causes of action brought pursuant to the Tennessee Human Rights Act ("THRA"):  gender-discrimination, failure to promote, wage disparity, and gender-based hostile work environment.   As a preliminary matter, the Court notes the Tennessee Supreme Court has repeatedly recognized the application of federal law to THRA cases. *See, e.g.*, *Parker v. Warren County Utility Dist.*, 2 S.W.3d 170, 172 (Tenn. 1999) (recognizing the Tennessee legislature intended the THRA "to be coextensive with federal law."); *Frizzell v. Southwest Motor Freight Co.*, 154 F.3d 641, 646 (6th Cir. 1998).   Therefore, the Court analyzes Plaintiff's THRA claims for gender-discrimination, gender-based hostile work environment, and failure to promote under the relevant federal standards.

### A.      Gender Discrimination Claim

In her complaint, Plaintiff alleges she was terminated because of her gender.  Defendant moves for summary judgment on Plaintiff's claim, contending Plaintiff was not replaced at all; instead, another female employee took over her duties. The Court will **GRANT** Defendant's motion for summary judgment  and Plaintiff's THRA gender discrimination claims will be **DISMISSED**.

Under both Title VII and the THRA, a plaintiff seeking to establish a claim of sex

discrimination bears the initial burden of establishing a prima facie case of discrimination. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). A plaintiff "may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by showing the existence of facts which create an inference of discrimination." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995). In the instant case, Plaintiff has proposed the indirect method and in doing so implicitly concedes her evidence does not suffice as direct proof. A plaintiff may establish her prima facie case of gender discrimination with indirect, circumstantial evidence by showing: (1) she was a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by a person outside the protected class, or a similarly situated non-protected employee was treated more favorably. *Talley*, 61 F.3d at 1246 (race discrimination); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999) (gender discrimination). "If the plaintiff establishes a prima facie case of gender discrimination, the burden of production shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment action." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

If the defendant is able to satisfy this burden, the plaintiff must then prove the defendant's proffered reason is, in fact, a pretext for unlawful discrimination. *Id.* Pretext can be proven by showing that: "(1) the stated reasons for the defendant's action had no basis in fact; (2) the stated reasons for defendant's action were not the actual reasons; or (3) the stated reasons for the defendant's action were insufficient to explain the [adverse action taken]." *Sampson v. Sec'y of Transp.*, No. 98-5669, 1999 WL 455399, at *2 (6th Cir. June 23, 1999); *Barnhart v. Pickrel,*

*Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1390 (6th Cir. 1993). A defendant bears only the burden of production and not the burden of persuasion. *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003). The plaintiff retains the burden of persuasion at all times. *Burdine*, 450 U.S. at 256.

Plaintiff has met the first three elements of her prima facie case: she is a woman and therefore a member of a protected class for the purposes of a gender-discrimination claim. Further, Defendant does not contest Plaintiff suffered an adverse employment action or that she was qualified for the position. Accordingly, the Court will address whether Plaintiff can prove she was replaced by a person outside the protected class.

### 1. Whether Plaintiff Was Replaced by a Person Outside the Protected Class

As discussed above, Plaintiff satisfies this element if she demonstrates she was replaced by a person outside the protected class or she was treated less favorably than a similarly situated, non-protected employee. *Peltier*, 388 F.3d at 987. Plaintiff cannot demonstrate, and indeed has not attempted to demonstrate, she was replaced by a person outside the protected class, since Plaintiff was never replaced at all and her duties were taken over by a female benefits specialist, Angela McLaughlin. *See Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992)("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."). Thus, to meet this prong, Plaintiff must show she was treated less favorably than a similarly situated, non-protected employee, i.e., a male employee.

"[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating

circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Plaintiff was terminated due to her performance as it related to Mr. Exum's health benefit plan. Plaintiff identifies one person, Len Grant ("Grant"), as being similarly situated to her[2] and states Grant, who was the male executive in charge of payroll, made repeated mistakes in paying Mr. Exum's salary and was never fired as a result of his mistakes. (Pl's Decl. ¶ 24). However, the Court does not consider Plaintiff to be similarly situated. Of primary importance, Mr. Exum was the decision maker in Plaintiff's termination and his decision was based upon Plaintiff's interaction with his wife and not with him. Mr. Exum's domestic circumstances were involved in the decision to terminate Plaintiff. Moreover, since Plaintiff's mistakes were with respect to Mr. Exum's health benefit plan and Mr. Grant's mistakes were with respect to Mr. Exum's salary, they were not similarly situated. *See Mitchell,* 964 F.2d at 583 ("Plaintiff's allegations regarding other employees not being fired for different, but what she subjectively believes to be more serious, misconduct simply does not satisfy [the fourth] element"). Accordingly, the Court finds Plaintiff cannot establish a prima facie case of gender discrimination, and Defendant's motion for summary judgment on this issue will be **GRANTED** and Plaintiff's gender discrimination claim will be **DISMISSED**.

**B.     Gender-Based Hostile Work Environment**

Plaintiff alleges she was subjected to a hostile work environment because of her gender. Defendant moves for summary judgment on Plaintiff's claim, arguing Plaintiff cannot establish a prima facie case. Specifically, Defendant argues: (1) Plaintiff was not subjected to unwelcome

---

[2]Plaintiff never actually points to this as support for her establishment of a prima facie case; rather, she discusses this when trying to undermine Defendant's legitimate, nondiscriminatory reason.

sexual harassment; (2) the harassment did not affect a term, condition or privilege of employment; and (3) the employer did not know of the alleged harassment and fail to respond with prompt and corrective action. The court will **GRANT** Defendant's motion for summary judgment, and Plaintiff's THRA hostile work environment claim will be **DISMISSED**.

To establish a hostile work environment based on sex, a plaintiff must show: (1) she was a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based upon the employee's protected status, (4) the harassment affected a term, condition, or privilege of employment, and (5) the existence of employer liability. *See generally Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999) (discussing elements of *prima facie* case for hostile work environment claim based upon gender). "A hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The workplace environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21-22).

In determining whether there was a hostile or abusive work environment, the Court must look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787-88. "[T]he issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of

11

action in a hostile environment case, but whether-taken together-the reported incidents make out such a case." *Bowman*, 220 F.3d at 463 (quoting *Williams*, 187 F.3d at 562). Isolated incidents alone must be extremely serious to serve as a basis for liability. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000).

Before the Court addresses the evidence presented by Plaintiff to prove her prima facie case, the Court must first consider Defendant's argument Plaintiff has attempted to create a genuine issue of material fact by executing an affidavit in contradiction to her testimony. *See Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."). In particular, Defendant is challenging the following statements made by Plaintiff:

> Krystal's Senior Vice President, Mike Bass, made frequent statements about a woman's place was at home and males being the dominant gender. Mr. Bass also commented that he liked to work his female employees like a pack of dogs. Mr. Bass made these comments on an almost weekly basis up until the time of my termination.

(Pl's Decl., ¶ 10). Defendant argues these remarks should be stricken since Plaintiff failed to identify them during her deposition when she was repeatedly asked to identify the "inappropriate" remarks to which she was allegedly subjected, (Day Dep. 93), and failed to identify them in her answer to Defendant's interrogatories.

Since Plaintiff's comments do not directly conflict with anything stated in her deposition, the Court will not strike or disregard these comments unless it determines the affidavit "constitutes an attempt to create a sham fact issue." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). To determine if a "sham fact issue" is present, the Court should consider, but is not limited to, "whether the affiant

was cross-examined during [her] earlier testimony, whether the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affiant attempts to explain." *Id*. at 908-09. A close and careful consideration of these factors convinces the Court paragraph ten of Plaintiff's declaration must should be disregarded in deciding the propriety of summary judgment.

During Plaintiff's deposition, she was extensively questioned about the comments she felt were inappropriate while she was employed with Defendant. (*See generally* Day Dep. at 93-122). Although at one point it appeared Defendant's counsel was going to change the subject, Plaintiff's counsel interrupted and asked if Defendant's counsel wanted Plaintiff to finish her list, and Defendant's counsel, in turn, asked Plaintiff if she was going to describe any other comments. *Id*. at 99. Plaintiff answered in the affirmative and went on to discuss other comments made to her, whether directly or indirectly, and this discussion continued for about 22 more pages. At one point during Plaintiff's deposition, her own counsel examined her, yet he did not mention the existence of any other inappropriate comments. (Day Dep. at 185-87). The Court notes none of this discussion reflected any type of confusion, and indeed, Plaintiff does not state in her declaration that she is attempting to clear up any confusion that occurred at the deposition.

Moreover, since Plaintiff alleges Bass made these comments on an almost weekly basis up until the time she was terminated, these comments certainly were not newly discovered evidence, which means she had knowledge of them during her deposition. The Court also deems it compelling that Defendant's Interrogatories to Plaintiff asked her to describe all facts and identify all witnesses establishing her claim of a hostile working environment, but once again, Plaintiff made

no mention of the comments contained in paragraph ten of her declaration. Finally, it is significant Plaintiff's declaration was filed almost a month after Defendant's motion for summary judgment and almost two months after she had given her deposition testimony. Under these circumstances, the Court is compelled to conclude paragraph ten of Plaintiff's Declaration raises only what the case law refers to as a "sham fact issue", and as such, the Court will disregard the comments contained therein. *See Franks*, 796 F.2d at 1237.

Defendant also contends Plaintiff, during her deposition, improperly relied on unsupported assertions made by Mathews to prove Defendant discriminates against women. (Day Dep. at 98-99, 111-12). Defendant correctly argues Plaintiff can only present admissible evidence to establish a genuine issue of fact. *See North Am. Speciality Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997) (noting while "parties may resist a summary judgment motion by presenting evidence in an inadmissible *form*, such as an affidavit, the evidence itself must be admissible.") (emphasis in original). Matthews is now deceased and cannot be a witness. Because Mathews' comments regarding Defendant discriminating against women amounted to legal conclusions, they are inadmissible evidence and cannot be relied on to defeat summary judgment. *See Mitroff v. Xomox Corp*., 797 F.2d 271, 276-77 (6th Cir. 1986) (holding statements allegedly made by assistant personnel manager of company regarding company's discriminatory practices, i.e., there was a pattern of age discrimination at the company, were opinions, which amounted to legal conclusions inadmissible absent qualification of manager as expert witness).

Even if they were admissible evidence, they also constituted stray remarks, and as such, would not suffice to satisfy Plaintiff's burden of demonstrating animus. *See Rowan v. Lockheed Martin Energy Sys., Inc*., 360 F.3d 544, 550 (6th Cir. 2004) ("[S]tatements by non-decision makers,

or statements by decision makers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden in demonstrating animus.") (quoting *Bush v. Dictaphone Corp*., 161 F.3d 363, 369 (6th Cir. 1998)).  Thus, in deciding the motion for summary judgment, the Court will not rely on these remarks.

### 1. Unwelcome Harassment

Defendant argues Plaintiff was not subjected to unwelcome "sexual" harassment since "only two almost entirely innocuous statements supporting her allegations" are present and neither is overtly sexual (Court File No. 24, Defendant's Brief in Support of Its Motion for Summary Judgment ("Def's Brief") at 10-11).  Since "*[a]ny* unequal treatment of an employee *that would not occur but for the employee's gender* may, if sufficiently severe or pervasive under the *Harris* standard, constitute a hostile environment in violation of Title VII, " *Williams*, 187 F.3d at 565 (emphasis in original), the comments presented by Plaintiff do not have to be sexual in nature to constitute harassment. Plaintiff presents the following evidence in support of this element:  (1) when she was terminated, Rendin gave her the option to resign and tell everyone she was doing so because of her upcoming marriage; (2) Soon after Plaintiff was terminated, Rendin commented she should not be upset because now she could stay home and raise her stepchildren; (3) Rendin told her she should choose between a career in management and being one of the girls; (4) Caldwell stated she was kept with Defendant's company as eye candy; (5) Mathews told Plaintiff she would never be considered for promotion because she was a woman; (6) when Plaintiff made executive presentations about benefits, Mr. Exum commented Defendant's insurance claims were so high because there were so many women of childbearing age on the medical plans.

While Plaintiff points to these comments in her brief as support for this element, the Court

finds it compelling Plaintiff admitted during her deposition she did not believe the behavior constituted harassment:

> Q: Did, during the time you worked for Krystal, did anyone engage in any behavior directed towards yourself that you believe constituted sexual harassment?
> A: No.
> Q: During the time you worked for Krystal, did anyone engage in any behavior directed towards yourself that you believe was harassment of some other kind?
> A: No.

(Day Dep. at 93). There is a subjective prong to the unwelcome harassment element necessary for a sexual harassment claim. For a plaintiff to prevail, the plaintiff must subjectively perceive the environment to be hostile. Since Plaintiff herself did not perceive her environment to be hostile and did not believe she was subjected to unwelcome harassment, then she has failed to establish her prima facie case. Thus, no genuine issue of material fact exists with respect to this element and summary judgment is proper on these grounds.

### 2. Severe and Pervasive Work Environment/ Employer Liability

Even if Plaintiff was subjected to unwelcome harassment, the evidence produced was not severe or pervasive enough to create a hostile work environment. In addition to a plaintiff having to subjectively perceive the environment as hostile, a plaintiff must prove that the environment is objectively hostile. Plaintiff's evidence amounts to six comments made over a period of six and a half years. Although Plaintiff found the comments to be inappropriate and unprofessional, the comments were not frequent, did not involve physically threatening or humiliating conduct, and most of the comments were not directed towards Plaintiff. Furthermore, there is no evidence the

comments unreasonably interfered with Plaintiff's work performance.[3]

Taken together, these sporadic comments do not make out a case for a hostile work environment. *See Burnett v. Tyco Corp*., 203 F.3d 980, 985 (6th Cir.2000) (holding three incidents over six months did not qualify as "commonplace, ongoing, or continuing," and therefore were not sufficiently pervasive to establish a genuine issue of material fact); *Black v. Zaring Homes, Inc*., 104 F.3d 822 (6th Cir.1997) (reversing jury verdict for plaintiff who alleged she was subjected to a hostile work environment; finding on appeal that despite allegations the plaintiff was subjected to various discriminatory comments and sexual innuendo at bi-weekly meetings from July to October 1993, told that she "was paid great money for a woman," and referred to as a "broad," defendant was entitled to judgment as a matter of law because under the totality of the circumstances the comments were merely offensive and were therefore insufficient to support the jury's verdict, and deeming important the fact that "most of the comments were not directed at plaintiff"); *Mast v. IMCO Recycling of Ohio, Inc*., 58 Fed.Appx. 116 (6th Cir. Feb.3, 2003) (unpublished) (holding that "three or four incidents over several months" not sufficiently severe or pervasive, even though they included "offensive comments directed at women in general" and an assault against plaintiff); *cf. Williams*, 187 F.3d at 565-68 (finding hostile work environment where, "there were fifteen separate allegations of sexual harassment over a period of one year that . . . included derogatory and profane remarks directed at the plaintiff, sexually explicit comments directed at plaintiff, offensive comments directed at women in general, denial of plaintiff's overtime, and the exclusion of plaintiff from certain workplace areas").

---

[3]Although Plaintiff argues in her response the comments had a negative impact on her job *duties*, she never argues it affected her job *performance*. In fact, the evidence shows it did not affect her job performance since she received glowing reviews just two months before her termination. (Court File No. 30, May 2005 Performance Review).

Under the totality of the circumstances, the evidence presented does not create an issue of material fact as to whether the conduct alleged was sufficiently severe and pervasive to create a hostile work environment. Thus, Plaintiff cannot establish a prima facie case for gender-based hostile work environment. Furthermore, since the Court has concluded Plaintiff cannot demonstrate the existence of a hostile work environment, there is no need to reach the issue of vicarious liability. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) ("An employer is subject to vicarious liability to a victimized employee for an *actionable* hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.") (emphasis added). Therefore, Defendant's summary judgment motion will be **GRANTED**, and Plaintiff's gender-based hostile work environment claims will be **DISMISSED**.

### C.        Failure to Promote

Plaintiff alleges she was denied a promotion to the position of Human Resources Director ("HRD") because of her gender. The only mention of this claim in Defendant's motion is contained in a footnote where Defendant generally states some of the allegations in the complaint allege a failure to promote. (Def's Brief at 14, n.8). Defendant further stated Plaintiff never applied for the HRD position, and by the time the new HRD was hired, Mr. Exum had already told Rendin to fire Plaintiff. *Id.* The Court concludes this language is sufficient to constitute a motion for summary judgment on Plaintiff's failure to promote claim, to the extent Plaintiff asserts such a claim, and interprets it as such.

To establish a claim based on failure to promote, Plaintiff must show: (1) she was a member of a protected class; (2) she applied and was qualified for a promotion; (3) she was considered for and denied the promotion; and (4) an individual of similar qualifications who was not a member of

the protected class received the job at the time Plaintiff's request for the promotion was denied. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005); *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000). In some instances, a plaintiff can establish a prima facie case even if she did not formally apply for the promotion. *See Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989) ("Because an employer may create an atmosphere in which employees understand that their applying for certain positions is fruitless, even nonapplicants can in appropriate circumstances qualify for relief . . . .") (quoting *Babrocky v. Jewel Food Co. and Retail Meatcutters Union, Local 320*, 773 F.2d 857 (7th Cir. 1985)); *Nguyen*, 229 F.3d at 563-64. If an employer filled the position "in question without asking for applications or posting the opening so that employees could apply for the position, then the application requirement is loosened somewhat. *Id.* at 146. In this situation, the plaintiff can establish the application element of a prima facie case by showing that, had she known of an . . . opening, she would have applied." *Wanger*, 872 F.2d at 146 (quoting *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985), *cert. denied*, 478 U.S. 1010 (1986)). To prove she would have applied for the position, Plaintiff must establish she had shown more than a general interest in the position. *Id.*

Defendant states Plaintiff cannot establish a prima facie case since she never applied for the HRD position. In her response, Plaintiff does not offer any evidence she applied for the position. Instead, she argues the position was never posted; she was never told Defendant was seeking outside candidates for the position; and she expressed interest in the position on several occasions. Plaintiff also states she was told by Matthews she "would never be considered for a promotion because she was a woman" (Day Dep. at 101).[4]

---

[4]Although Plaintiff does not point to this comment in her discussion of the application requirement, the Court will discuss it here since it is relevant to whether it would have been futile

Since Defendant did not post the position, the application requirement is "loosened somewhat" in this case. *Wanger*, 872 F.2d at 146. Nonetheless, Plaintiff still has not established the application requirement was met. Plaintiff's evidence merely shows she expressed a general interest in the position, and such a showing is not enough to meet the application requirement. *Wanger*, 872 F.2d at 146. While Mathews' comment was indicative of a possible rejection of her application if she applied, this isolated comment is not enough to excuse the application requirement. *See Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004) (stating failure to apply for a promotion may be excused but "the circumstances must reveal overwhelming evidence of pervasive discrimination in all aspects of [the employer's] internal employment practices, and [that] . . . any application would have been futile and perhaps foolhardy."). From the undisputed evidence before the Court it is clear Plaintiff exercised independent judgment and would not blindly accept Matthews' or other supervisors' judgment or opinions. This was exhibited when Plaintiff disregarded Rendin's suggestion she attend a women in management seminar and instead chose to attend seminars of interest to her. Therefore, Plaintiff has failed to establish a prima facie case of failure to promote. As such, the Court will **GRANT** Defendant's motion for summary judgment on this claim and will **DISMISS** Plaintiff's claim against Defendant for failure to promote.


D.     **Equal Pay Act Claim**

Under the Equal Pay Act ("EPA"), employers are prohibited from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. *See* 29 U.S.C. § 206(d)(1). To establish a prima facie case for an EPA claim, the plaintiff must show "an employer pays

---

to apply.

different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)). To be considered "equal work" under the EPA, the jobs need not be identical. *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006). Rather, "[w]hether a job is substantially equal for purposes of the EPA is determined on a case-by-case basis and 'resolved by an overall comparison of the work, not its individual segments.'" *Id.* (quoting *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)).

If the plaintiff establishes a prima facie case, the defendant must prove by a preponderance of the evidence the wage differential is justified under one of the four affirmative defenses set forth in the EPA: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality production; or (4) any other factor other than sex. 29 U.S.C. § 206(d)(1); *Corning Glass Works*, 417 U.S. at 196-97; *Buntin v. Breathitt County Bd. Of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998); *Timmer v. Mich. Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997). Although the fourth affirmative defense serves as a catch-all provision, it does not include literally *any* other factor; rather, at a minium, the factor must have been adopted for a legitimate business reason. *EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1998). "A wage differential based on education or experience is a factor other than sex for purposes of the Equal Pay Act." *Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005); *Ambrose v. Summit Polymers, Inc.*, 172 Fed.Appx. 103, 107 (6th Cir. 2006).

Since these are affirmative defenses, the defendant bears the burden of proof. *Buntin*, 134 F.3d at 799. Consequently, to succeed on summary judgment the defendant must establish "the

defense so clearly that no rational jury could [find] to the contrary." *Id*. at 800. Although the burden for proving that a factor other than sex is the basis for a wage differential is a heavy one, if proven, the defendant is absolved of liability as a matter of law. *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826-87 (6th Cir. 2000); *Timmer*, 104 F.3d at 843.

Plaintiff attempts to establish her prima facie case by showing Defendant hired three male "managers" —Carl Sheffield ("Sheffield"), Manager of Business Applications Delivery; James Phillips ("Phillips"), Director of Financial Analysis; and Richard Payne ("Payne"), Training and Communications Specialist— at starting salaries of $75,000 while she was hired with a starting salary of $30,000. In support of this allegation, Plaintiff essentially argues the duties and end goals of the managers, regardless of their department subject matter, are similar because they all manage a department, supervise employees in their department, work the same hours and work at the same physical location. Since an overall comparison of the positions reveal they are not substantially equal, Plaintiff has failed to establish a prima facie case.

First, only Sheffield shares the manager title; Phillips is a director, which is superior to Plaintiff's position, while Payne is a specialist. Regardless of their titles, none of the positions held by these employees requires equal skills as Plaintiff's position. The Manager of Business Applications Delivery is required to have a Master's Degree in Business Administration or Computer Science, and 8-10 years experience in Accounting, Finance and Computer Operations or Systems Consulting. (Court File No. 35, Exh. G., Exh. 1, Manager of Business Applications Delivery, p. 1). The Director of Financial Analysis and Planning must possess a broad range of skills, including being "analytical from a numbers and financial perspective" and having a "thorough understanding of the information technology systems and the underlying databases that are in place

and must have the ability to efficiently extract date from those systems and transform that data into information." (Court File No. 35, Exh. G, Exh. 2, Director of Financial Analysis and Planning Job Requirements, p.1).

The Training and Communications Specialist is required to have at least ten years experience as a manager/coordinator of high-technology projects as well as expert knowledge and experience with various other computer fields and programs. (Court File No. 35, Exh. G, Exh. 3, Training and Communications specialist, pp. 2-3). While Plaintiff has a Master's Degree in Human Resources Management and a Senior Professional in Human Resources Certificate, there is no evidence these skills were required for her position of Employee Benefits Manager. Even if such evidence was before the Court, these skills still are not substantially equal to the skills required of the positions held by Sheffield, Phillips, and Payne.

In addition to failing to show substantially equal skills, Plaintiff has failed to establish her job and the jobs of Sheffield, Phillips, and Payne carry substantially equal responsibilities. Despite Plaintiff's focus on the general responsibilities she shares with the three men she uses as comparators, the Court finds it significant each of these positions involve completely different functions than Plaintiff's position. The Manager of Business Applications Delivery is responsible for business systems and architecture plans; trains accounting, payroll and other staff in technical matters; develops detailed information technology project plans for each project; and works with developers on new restaurant projects. (Court File No. 35, Exh. G., Exh. 1, Manager of Business Applications Delivery, p. 1). The Director of Financial Analysis and Planning is responsible for the entire budgeting process, including developing individualized budgets for each of the company-operated units and interacting directly with the Chief Financial Officer. (Court File No. 35, Exh.

G, Exh. 2, Director of Financial Analysis and Planning Job Requirements, p.1).

The Training and Communications Specialist is responsible for designing, developing, and administering training and communications projects for Defendant, serves as Editor for numerous Krystal publications, is the Webmaster for Defendant's website, and provides media support for special projects and meetings. (Court File No. 35, Exh. G, Exh. 3, Training and Communications specialist, pp. 2-3). Conversely, the Employee Benefits Manager is responsible for managing benefits for more than 10,000 employees, managing a budget of $3.5 million; and managing human resource relationships such as worker's compensation, training and orientation, employee statistics, etc. (Day Dep. at 76-78). As a review of the responsibilities reveals, they are not substantially equal.

After reviewing the proof presented regarding the skill and responsibilities for Plaintiff's position and her comparator's positions, the Court concludes Plaintiff has failed to set forth a prima facie case under the EPA. Plaintiff's attempt to abstractly compare the skills and responsibilities of these positions does not establish a prima facie case. *See Wheatley v. Wicomico County, Maryland*, 390 F.3d 328, 334 (4th Cir.) (declining to hold "having a *similar* title plus *similar* generalized responsibilities is equivalent to having equal skills and equal responsibilities.") (emphasis in original).

In a similar argument, Plaintiff contends Defendant violated the EPA when it hired Michael Hildebrant ("Hildebrant"), who "replaced Plaintiff as HR Director," at a salary of $82,000 per year, plus bonuses and a car allowance, which was almost twice as much as what Plaintiff was making. (Court File No. 30, Plaintiff's Response to Defendant's Motion for Summary Judgment at 21). As support for this argument Plaintiff states "for approximately 15 months, [she] had been performing

the job of HR Director while Mathews was on medical leave and after he retired." *Id*. Plaintiff has failed to establish a prima facie case with respect to Hildebrant for several reasons. First, the Court notes Hildebrant did not replace Plaintiff. Hildebrant was hired as HRD while Plaintiff was still serving as Employee Benefits Manager. Although Plaintiff assumed some of Mathews' duties when he was on leave and after he ended his employment with Defendant, she was never hired as HRD.

Nonetheless, since the Court's focus is on actual job requirements and duties rather than job classifications and titles, "[a] plaintiff establishes a prima facie [EPA] case by comparing the jobs held by the female and male employees, and by showing that those jobs are substantially equal, not by comparing the skills and qualifications of the individual employees holding the jobs." *Beck-Wilson,* 441 F.3d at 362-63. In this case, Plaintiff relies on the fact she performed some of the duties of the HRD as the basis for establishing her prima facie case as it relates to Hildebrant. However, at the prima facie case stage, the Court does not compare the skills and qualifications of Plaintiff and Hildebrant; instead, the court compares "only the skills and qualifications actually needed to perform the jobs." *Id*. at 362-63. Since Plaintiff has not presented any evidence regarding the skills and qualifications actually needed to perform the jobs, she has not established a prima facie case that a violation of the EPA occurred.

Even if Plaintiff could establish a prima facie case with respect to Sheffield, Phillips, Payne, and Hildebrant, Defendant has presented substantial evidence the difference in pay was due to a factor other than sex. First and foremost, Hildebrant was hired as the Human Resources Director, a position superior to Plaintiff's position as Employee Benefits Manager. Plaintiff acknowledged during her deposition Defendant uses job codes to determine what an employee's salary will be and that director-level positions have the same job code. Since Plaintiff was not a director, and in fact

held a position inferior to the director's position, it logically follows she would not have the same job code as Hildebrant and surely she would not have been paid the same salary as Hildebrant.

In addition to job codes, Plaintiff also recognized Defendant set salaries based on experience, what the market will bear with respect to different employees, etc. Defendant's evidence shows Hildebrant spent three years as a human resources manager for Thyssen Krupp Elevator; worked as a human resources generalist at the corporate office of Stein Mart, where he was responsible for benefits administration, recruiting, new hire orientations, exit interviews, training and development, and employee relations; and he served as Director of Human Resources for Community Management Concepts for four years, where his responsibilities included benefits administration, interviewing and recruiting, payroll, and employee relations. (Court File No. 30, Deposition of Michael Hildebrant ("Hildebrant Dep.") at 22-23, 27, 34-36). Thus, Hildebrant's salary was based not only on a director job code but also on his general experience in human resources.

While Hildebrant had years of experience to bring to the table when he was hired as a director, Plaintiff did not have a lot of experience when she was hired as a manager. Indeed, after Reeher interviewed her he noted she was "light on what [they] ideally wanted but could grow into the role...(She's not a candidate for the HR Manager slot)." (Rendin Decl., part (b)). Even though Plaintiff was "light" on what they wanted, Defendant hired her at a salary higher than what she was earning at her then-current job. While it is true Plaintiff assumed some of the HRD duties when Mathews was on leave and even after he left permanently, Plaintiff shared those responsibilities with Rendin and outside companies. Even accepting, as true, her deposition testimony that during this time 50 percent of her work involved benefits and 50 percent involved other things, it does not follow that since she took on additional responsibilities in her role as a manager she should have

been paid the salary of a director. Finally, Plaintiff's argument regarding her education levels being higher than Hildebrant's are irrelevant considerations since Defendant relied on Hildebrant's experience in hiring him rather than his education. Such reliance is permissible. *See Balmer*, 423 F.3d at 612 ("A wage differential based on education *or* experience is a factor other than sex for purposes of the Equal Pay Act." )(emphasis added).

When Sheffield, Phillips, and Payne were hired, they also had years of experience in their field. Sheffield had twelve years of experience in accounting and information technology; Phillips had nine years of experience working as a financial analyst and financial planner; and Payne had over 32 years experience in the area of communications. Therefore, Defendant has satisfied its burden of proving by a preponderance of the evidence the wage disparity was caused by a factor other than sex. While Plaintiff is not required to prove pretext, she must still come forward with evidence demonstrating a triable issue of fact. *Timmer*, 104 F.3d at 844. Plaintiff has not done so. Therefore, the Court will **GRANT** Defendant's motion for summary judgment, and Plaintiff's claim under the EPA will be **DISMISSED**.

### E.    THRA Wage Discrimination Claim

Although Defendant's motion for summary judgment did not address Plaintiff's claims for wage discrimination under the THRA, Defendant argues in its reply brief a successful affirmative defense to an EPA claim is also a valid defense to a wage discrimination claim based on Title VII. Defendant's argument has merit. *See Beck-Wilson*, 441 F.3d at 369 ("An employer may therefore avoid liability under a Title VII wage discrimination claim if it can establish one or more of the four affirmative defenses in the EPA."); *Fallon v. State of Ill.*, 882 F.2d 1206, 1213 (7th Cir. 1989) ("[A] successful affirmative defense to an Equal Pay Act claim likewise serves as a valid defense to a

claim based on Title VII."). Since the Court has determined Defendant successfully set forth an affirmative defense to Plaintiff's EPA claim, Defendant has also set forth an affirmative defense to Plaintiff's wage discrimination claim under the THRA. Therefore, Plaintiff's THRA claim for wage discrimination will be **DISMISSED**.

## IV. CONCLUSION

For the reasons stated above, the Court finds Plaintiff has failed to create a genuine dispute of material fact with respect to her gender discrimination claim, failure to promote claim, hostile work environment claim, and EPA wage discrimination claim. As a result, the Court will **GRANT** Defendant's motion for summary judgment. The Court also decides Plaintiff's wage discrimination claim under the THRA should be **DISMISSED**.

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**